

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00155-CR

**THE STATE OF TEXAS,**

**Appellant**

**v.**

**TERILU DUBOIS HANRAHAN,**

**Appellee**

**From the County Court
Limestone County, Texas
Trial Court No. 34871**

## MEMORANDUM  OPINION

In this interlocutory appeal, appellant, the State of Texas, challenges the trial court's granting of a motion to suppress in favor of appellee, Terilu Dubois Hanrahan. The complained-of evidence relates to a driving-while-intoxicated offense alleged to have been committed on October 3, 2010. In three issues, the State argues that: (1) the trial court should have dismissed appellee's motion to suppress for failing to state a ground on which relief could be granted; (2) reasonable suspicion of a crime does not require that the crime actually be committed; and (3) the trial court abused its discretion

in failing to consider the totality of the circumstances regarding whether the arresting officer had reasonable, articulable suspicion that appellee was intoxicated. We affirm.

## I. BACKGROUND

The only witness at the suppression hearing was the arresting officer, Officer Brian Bell of the Mexia Police Department. Officer Bell testified that he observed appellee driving eastbound on Milam Street at approximately 1:00 a.m. in Mexia, Texas. He first noticed appellee's vehicle "swerving from side to side within its lane." Then, "[t]he vehicle began to maintain a relatively straight path. As I started to slow down, I observed the vehicle cross the white line, and it was traveling in the improved shoulder while prohibited, leading me to believe the driver was possibly fatigued or intoxicated." Officer Bell noted that appellee's alleged act of crossing the white line, otherwise known as the "fog line," was a violation of section 545.058(a) of the Texas Transportation Code and supported a traffic stop. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011). He also stated that appellee's alleged driving on the improved shoulder did not fall within any of the seven enumerated exceptions to section 545.058(a). *See id.* § 545.058(a). Officer Bell subsequently stopped appellee. When he approached appellee's vehicle, Officer Bell smelled alcohol on appellee's breath; he noticed "[appellee's] movements were uncoordinated"; and appellee's "speech was slurred." Officer Bell asked appellee if she had been drinking that evening to which she informed him that "she had been" drinking at the Falcon, a bar in Mexia. He then administered field sobriety tests, all of which appellee performed poorly. Appellee was asked to perform a Breathalyzer, but she declined to participate. Officer Bell did not request a blood sample from appellee

because it was her first offense and he believed he had sufficient evidence to demonstrate that appellee "was not in control of her physical faculties and could not safely operate another vehicle."

On cross-examination, Officer Bell was asked about his justification for stopping appellee. He admitted that appellee's alleged "swerving from side to side within [her] lane" did not amount to a violation of the transportation code and, thus, did not warrant a traffic stop, especially considering that appellee quickly "regained control of the vehicle and was driving appropriately." Officer Bell was asked about how the video camera on his patrol car operates. He noted that he can activate the video camera by pressing "record"; otherwise, the video camera automatically activates when the lights and sirens of the patrol car are turned on. He admitted that he did not activate the video camera himself; instead, the video camera activated when he turned on the lights and sirens of the patrol car, which occurred just prior to appellee's alleged traffic violation. The video of the traffic stop was then admitted into evidence. Officer Bell described that the violation of the transportation code which precipitated the traffic stop was captured on the video. He was then asked to point out to the trial court exactly where on the video appellee committed a traffic violation. At some point, Officer Bell explained that appellee crossed the "fog line" and drove on the improved shoulder. When asked how far over the "fog line" appellee allegedly went, he responded, "I can't recall exactly. Probably just the passenger side tires probably just crossed over." Officer Bell acknowledged that no other aspect of the video captured a traffic violation being committed by appellee. In questioning Officer Bell about the

alleged traffic violation, the video was played several times during the suppression hearing.

At the conclusion of the hearing, the trial court granted appellee's motion to suppress and noted the following:

> If just—I'm not sure her tires moved the video. I couldn't even tell [that she] was driving on the shoulder until he [Officer Bell] pointed it out, and her tires might have—I'm not even sure they crossed all the way across the white line. If that's sufficient to call it driving on the shoulder, I don't know if I have ever driven a car when I didn't justify getting stopped.
>
> . . . .
>
> The testimony didn't add anything to that, except to say that he had no justification for stopping her prior to the line—the tires touching the white line. I can't call that driving on the improved shoulder. I think if he had given her a citation based upon that, nobody would have convicted her.

As a result of the trial court's ruling, the following evidence was suppressed:

a. Any and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Terilu Dubois Hanrahan in this case or in connection with the investigation of this case, including any testimony by the Mexia Police Department or any other law enforcement officers or others concerning such evidence.

b. The arrest of Terilu Dubois Hanrahan at the time and place in question and any and all evidence which relates to the arrest, and any testimony by the Mexia Police Department or any other law enforcement officers or others concerning any action of Terilu Dubois Hanrahan while in detention or under arrest in connection with this case.

c. All written and oral statements made by Terilu Dubois Hanrahan to any law enforcement officers or others in connection with this case, and any testimony by the Mexia Police Department or any other law enforcement officers or others concerning any such statements.

The trial court also entered the following findings of fact:

1. The Defendant was stopped by the Mexia Police Department on October 3, 2010 in Limestone County, Texas.

2. The Defendant's vehicle did not travel on the improved shoulder of the highway prior to the stop by the police.

3. The police officer did not have reason to have a reasonable suspicion that the Defendant had violated a law prior to stopping the Defendant.

This appeal followed.

## II.   THE SUPPRESSION HEARING

In its first issue, the State contends that the trial court abused its discretion in holding a hearing on appellee's motion to suppress because the motion "failed to specifically state a ground on which relief could be granted" or, in other words, was vague and lacking in specificity. The State argues that appellee's motion to suppress should have been dismissed without a hearing because of the alleged lack of specificity.

### A.  Standard of Review

Courts have consistently approved the procedure of allowing a trial judge to determine at which point a suppression motion will be heard. *See Cox v. State*, 843 S.W.2d 750, 752 (Tex. App.—El Paso 1992, pet. ref'd); *see also Montoy v. State*, No. 06-09-00030-CR, 2009 Tex. App. LEXIS 8221, at *11 (Tex. App.—Texarkana Oct. 27, 2009, pet. ref'd) (mem. op., not designated for publication). In fact, article 28.01 of the code of criminal procedure prescribes the pre-trial motion practice for criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 28.01 (West 2006). However, the provisions of article 28.01 are not mandatory, and the question of whether to hold a pre-trial hearing on a pre-trial motion to suppress evidence is within the sound discretion of the trial court. *See*

*Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988); *Morrison v. State*, 71 S.W.3d 821, 825-26 (Tex. App.—Corpus Christi 2002, no pet.); *State v. Reed*, 888 S.W.2d 117, 119 (Tex. App.—San Antonio 1994, no pet.); *Cox*, 843 S.W.2d at 752; *see also Montoy*, 2009 Tex. App. LEXIS 8221, at \*\*11-12. An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). Unless the trial court's decision was outside the "zone of reasonable disagreement," an appellate court should uphold the ruling. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006).

## B. Applicable Law

A motion to suppress is a specialized objection to the admissibility of evidence. *See Johnson v. State*, 171 S.W.3d 643, 647 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Thus, a motion to suppress must meet all of the requirements of an objection; that is, it must be timely and sufficiently specific to inform the trial court of the complaint, unless the specific grounds are apparent from the context. *Porath v. State*, 148 S.W.3d 402, 413 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see* TEX. R. APP. P. 33.1(a). This Court has stated the following regarding the application of rule 33.1's preservation requirements:

> "The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Lewis v. State*, 191 S.W.3d 335, 338 (Tex. App.—Waco 2006, pet. ref'd) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

## C. Discussion

In her motion to suppress, appellee noted that she was charged with the offense of driving while intoxicated and alleged that: (1) the actions of the Mexia Police Department violated her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution, and article 38.23 of the code of criminal procedure; (2) she was arrested without lawful warrant, probable cause, or other lawful authority in violation of several provisions of the United States and Texas Constitutions; and (3) any statements or evidence obtained from her violated article 38.22 of the code of criminal procedure and various provisions of the United States and Texas Constitutions. *See* U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. arts. 38.22, 38.23 (West 2005). Based on our reading of appellee's motion to suppress, we find that it contained sufficient specificity to inform the trial court of her complaints. Moreover, at the suppression hearing, the State neither claimed surprise nor moved to continue the case on the basis of surprise or the alleged lack of specificity contained in the motion. In addition, when the State moved to dismiss appellee's suppression motion for lack of specificity at the beginning of the hearing, appellee's trial counsel stated that "the basis for the Motion to Suppress is that there was no reasonable suspicion or probable cause to stop Ms. Hanrahan, the defendant, in this case in the first place." We believe this

explanation comports with the written language contained in appellee's motion to suppress. Furthermore, there is no indication in the record that the trial court did not understand what appellee wanted and why she felt entitled to the relief requested. *See Lankston*, 827 S.W.2d at 909; *Lewis*, 191 S.W.3d at 338; *see also* TEX. R. APP. P. 33.1(a). As such, we conclude that the State has failed to demonstrate that the trial court abused its discretion in conducting a hearing on appellee's motion to suppress. *See Calloway*, 743 S.W.2d at 649; *Morrison*, 71 S.W.3d at 825-26; *Reed*, 888 S.W.2d at 119; *Cox*, 843 S.W.2d at 752; *see also Montoy*, 2009 Tex. App. LEXIS 8221, at **11-12. We overrule the State's first issue.

### III. THE TRIAL COURT'S RULING ON APPELLEE'S MOTION TO SUPPRESS

In its second and third issues, the State contends that the trial court abused its discretion in granting appellee's motion to suppress. Specifically, the State asserts that the trial court erred in concluding that the arresting officer lacked reasonable suspicion to stop appellee, especially considering the totality of the circumstances.

### A. Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not

turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When a trial judge makes explicit fact findings regarding a motion to suppress, an "appellate court [must first] determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

## B. Applicable Law

In a hearing on a motion to suppress evidence based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005*); see State v. Dietiker*, 345 S.W.3d 422, 424 (Tex. App.—Waco 2011, no pet.). The defendant's burden may be satisfied by establishing that a search or seizure occurred without a warrant. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. After this showing is made by the defendant, the State assumes the burden of demonstrating that the search or seizure was conducted pursuant to a warrant or was

reasonable. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. In this proceeding, the State stipulated that the stop was made without a warrant and assumed the burden of proof regarding whether reasonable suspicion for the stop existed.

A determination of reasonable suspicion is made by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). In *Foster v. State*, the court of criminal appeals repeated the standard for warrantless traffic stops:

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.

326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (internal quotations omitted).

Section 545.058(a) of the transportation code provides the following, in pertinent part:

> (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
> (1) to stop, stand, or park;
>
> (2) to accelerate before entering the main traveled lane of traffic;
>
> (3) to decelerate before making a right turn;
>
> (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

TEX. TRANSP. CODE ANN. § 545.058(a).

## C. Discussion

Here, Officer Bell testified that, based on his observation of the front passenger tires of appellee's vehicle crossing the "fog line," appellee only violated section 545.058(a) of the transportation code that night. *See id.*; *see also Dietiker*, 345 S.W.3d at 425 ("It is the State's choice to determine which traffic violation it relies upon in establishing reasonable suspicion for a traffic stop."). However, on cross-examination, Officer Bell was unable to clearly explain to what degree appellee crossed the "fog line." Furthermore, the video from the camera installed in Officer Bell's patrol car that captured the incident was admitted into evidence and failed to clearly show a violation of section 545.058(a) of the transportation code. *See* TEX. TRANSP. CODE ANN. § 545.058(a). While in some instances an officer's observation of a violation of the transportation code unequivocally establishes a violation of the law justifying a traffic stop, *see Hicks v. State*, 255 S.W.3d 351, 354 (Tex. App.—Texarkana 2008, no pet.), in this case, the trial court was able to not only consider the testimony of Officer Bell, but it also was able to consider the video recording of the incident. And in granting appellee's motion to suppress, the trial court clearly did not believe the testimony of Officer Bell, and it did not believe that the videotape conclusively demonstrated a violation of the transportation code. Essentially, the determination of whether Officer

Bell had reasonable suspicion to stop appellee turned on the trial court's evaluation of Officer Bell's credibility and an evaluation of the video recording within the context of Officer Bell's testimony. *See Guzman*, 955 S.W.2d at 89. In such instances, we afford "almost total deference" to the trial court's conclusions. *See id.* Furthermore, because the trial court entered fact findings stating that it did not believe that a traffic violation occurred, we must review the fact findings in a light most favorable to the trial court's ruling. *See Kelly*, 204 S.W.3d at 818.

In addition, we disagree with the State's contention that the trial court failed to consider the totality of the circumstances when it concluded that Officer Bell did not have reasonable suspicion to stop appellee. Although neither the judgment nor the trial court's findings of fact explicitly reference a consideration of the totality of the circumstances, we can imply that the trial court considered such circumstances given that: (1) Officer Bell testified that he observed appellee's alleged traffic violation at approximately 1:00 a.m.—a time of night which, based on Officer Bell's four years of experience, is common for driving-while-intoxicated offenses to occur—and that appellee was leaving an area where many bars and restaurants are located; and (2) the trial court, after considering Officer Bell's testimony and the video recording, determined that appellee's vehicle "did not travel on the improved shoulder of the highway prior to the stop by the police" and, thus, no traffic violation occurred. *See Moran*, 213 S.W.3d at 922; *Kelly*, 204 S.W.3d at 818-19; *see also Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) ("The courts of appeals are not at liberty to engage in fact-finding . . . .").

Therefore, applying the governing standards of review, we cannot say that the State has presented sufficient evidence to demonstrate that the trial court abused its discretion in granting appellee's motion to suppress. *See Crain*, 315 S.W.3d at 48; *Guzman*, 955 S.W.2d at 88-89. Accordingly, the State's second and third issues are overruled.

## IV. CONCLUSION

Having overruled all of the State's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed February 15, 2012
[CR25]